BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**AMY E. POTTER**
amy.potter@usdoj.gov
Assistant United States Attorney
405 E. 8th Street, Suite 2400
Eugene, Oregon  97401-2708
Telephone: (541) 465-6771
Attorneys for the United States

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE

| | |
|---|---|
| UNITED STATES OF AMERICA, | 6:18-cv-01038-MA |
| Plaintiff, | |
| v. | COMPLAINT |
| $21,306.00 in U.S. Currency, *in rem*, | |
| Defendant. | |

Plaintiff, United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, and Amy E. Potter, Assistant United States Attorney, for its complaint *in rem* for forfeiture, alleges:

I.

This Court has subject matter jurisdiction, *in rem* jurisdiction, and venue pursuant to 21 U.S.C. § 881; 28 U.S.C. §§ 1345, 1355, 1356, and 1395; and 19 U.S.C. § 1610.

II.

Defendant, *in rem*, $21,306.00 in U.S. currency, was seized in the District of Oregon, and is now and during the pendency of this action will be within the jurisdiction of this Court.

**Complaint *in rem* for Forfeiture**                                                                                   **Page 1**

### III.

Defendant, *in rem*, $21,306.00 in U.S. currency, represents proceeds traceable to an exchange for controlled substances or was used or intended to be used to facilitate such a transaction in violation of 21 U.S.C. § 801, *et. seq.*, and is forfeitable to the United States pursuant to the provisions of 21 U.S.C. § 881(a)(6), as more particularly set forth in the declaration of Sean Cummings, Special Agent, Drug Enforcement Administration, marked as Exhibit A, attached and fully incorporated herein by this reference.

WHEREFORE, plaintiff, United States of America, prays that due process issue to enforce the forfeiture of defendants, *in rem*, $21,306.00 in U.S. currency; that due notice be given to all interested persons to appear and show cause why forfeiture of this defendant, *in rem*, should not be decreed; that due proceedings be had thereon; that this defendant be forfeited to the United States; that the plaintiff United States of America be awarded its costs and disbursements incurred in this action.

DATED: **June 13, 2018**          Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney

*s/ Amy E. Potter*
**AMY E. POTTER**
Assistant United States Attorney

## VERIFICATION

I, Sean Cummings, declare under penalty of perjury, pursuant to the provisions of 28 U.S.C. Section 1746, that I am a Special Agent with the Drug Enforcement Administration and that the foregoing Complaint *in rem* for Forfeiture is made on the basis of information officially furnished and upon the basis of such information the Complaint *in rem* for Forfeiture is true as I verily believe.

*s/ Sean Cummings*
**SEAN CUMMINGS**
Special Agent
Drug Enforcement Administration

## DECLARATION of SEAN CUMMINGS

I, SEAN CUMMINGS, do hereby declare:

### BACKGROUND/EXPERIENCE

1.  I am a Special Agent (SA) with the Drug Enforcement Administration (DEA). As such, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) and empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516. I also am responsible for investigating drug-related crimes within the United States. Under 21 U.S.C. § 878, I am empowered to make arrests and obtain and execute search warrants.

2.  I have been employed in the field of law enforcement since 1992 and have worked as a Dispatcher, Police Services Officer, Reserve and Police Officer for the City of Eureka Police Department in Eureka, California. I was later promoted to Detective and, while employed there, assigned to the Bureau of Narcotics Enforcement Task Force with primary responsibility to investigate controlled substance offenses. I have been employed as a DEA Special Agent since July 1999.

3.  I completed the 17-week DEA Basic Agent Training program in Quantico, VA. The training focused on methods of unlawful drug trafficking; the identification of controlled substances; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activities; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets intended to be used to facilitate the drug violations. My specialized training has included, but is not limited to, the investigation of the manufacture, possession, and distribution of controlled

substance listed within the Controlled Substance Act; executing search and arrest warrants involving drug offenses; gathering drug and non-drug evidence; participating in undercover assignments; supervising and utilizing informants; investigating clandestine laboratories, smuggling, and money laundering; and monitoring drug-related conversations via Court authorized electronic eavesdropping.

4. During my employment as a DEA Special Agent, I have participated in over 100 investigations involving all of the above knowledge and skills. Through the course of my employment, I also know that controlled substance traffickers often use another person's vehicles or register their vehicles in another party's name to hide assets and their identity from law enforcement. I know from my training and experience that controlled substance traffickers and their criminal associates use cash to hide illicit income from law enforcement and avoid paying taxes on that illicit income.

## PURPOSE OF THIS DECLARATION

5. This declaration details the seizure of $21,306.00 in U.S. Currency in Springfield, OR from a vehicle that was owned by Sabrina Wiseman, the claimant, and at the time of the traffic stop was occupied by Paul Allen Blain and Wesley Jackson Rofinot. This declaration is based on a DEA investigation and information provided to me by the Springfield Police Department (SPD) and does not include all of the facts known to me regarding this investigation, only those sufficient to establish probable cause to seize the above referenced asset. As discussed below, I believe there is probable cause to believe that the $21,306.00 is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as it constitutes or was derived from proceeds traceable to violations of 21 U.S.C. § 841(a)(1).

## SUMMARY OF THE INVESTIGATION

6. On November 9, 2017 at approximately 12:41 a.m., SPD Officer T.J. Bazer was conducting patrol in his marked patrol unit near South 42nd and Main Street in Springfield, OR.

7. Officer Bazer observed a vehicle parked at an ATM near Dutch Brothers on the southeast side of the intersection. The vehicle was occupied by a male driver and Officer Bazer saw another male walking to the passenger side of the vehicle. When the male noticed the marked police vehicle, he walked faster and quickly looked down. Officer Bazer contacted a nearby officer, Officer Stone, about the vehicle, and they continued to observe the vehicle.

8. The vehicle, a 1977 Chevrolet Corvette, bearing Oregon license plate number 959EHP, pulled out of the parking lot and started driving south on South 42nd Street. Officer Bazer followed the vehicle and when it exited the round-about at South 42nd and Jasper, the driver did not signal as required by law. Officer Bazer activated his emergency lights and stopped the vehicle. Officer Bazer contacted the male driver, Paul Allen Blain, and told him why he had pulled him over. While Blain was retrieving his license, registration, and proof of insurance, Officer Bazer asked the male passenger if he could see his identification. The passenger said "Sure" and handed him an Oregon Identification Card identifying him as Wesley Jackson Rofinot. Officer Bazer noticed Rofinot was very fidgety and couldn't stop moving his hands. The vehicle was registered to Sabrina Lyn Wiseman.

9. Officer Bazer noticed the vehicle contained a lot of property including tools and new items in unopened packages. Rofinot saw Officer Bazer looking at the property and stated something about having just gone shopping for his daughter's birthday.

10. Officer Bazer went back to his patrol vehicle and ran a records check on both Blain and Rofinot. Dispatch advised that Blain was on Post-Prison supervision for Delivery of

Methamphetamine and Rofinot was an absconded corrections client for dangerous drugs. Blain had local cautions for eluding by foot and vehicle and Rofinot had cautions for being armed and for resisting arrest.

     11. Officer Bazer returned to his patrol vehicle and started filling out a citation for Blain. Officer Stone went to Officer Bazer's vehicle and had Blain sit in the back seat, then left to contact Rofinot. While in the back of Officer Bazer's patrol vehicle, Blain stated that he did not know Rofinot and had only offered to give him a ride to an ATM. Officer Bazer exited his patrol vehicle and went to where Officer Stone and Rofinot were standing. Officer Stone told Officer Bazer he observed a methamphetamine pipe in the vehicle on the passenger side where Rofinot was sitting. Officer Stone and Officer Bazer placed Rofinot into properly-fit handcuffs without incident. Officer Stone advised Rofinot of his rights per Miranda and Rofinot stated he understood his rights. Rofinot stated he didn't know anything about the pipe and that he did not know Blain very well. Officer Bazer placed Rofinot in the back of Officer Stone's patrol vehicle.

     12. When Officer Bazer walked back to his vehicle, Officer Stone had taken Blain into custody and stated Blain had invoked his rights so they ceased their conversations with Blain. Officer Stone and Officer Bazer searched the vehicle for additional evidence of delivery of methamphetamine. On the driver side floorboard tucked up against the seat, Officer Bazer noticed a camouflaged bag which he opened and located four bundles of cash, each wrapped with rubber bands, and Officer Bazer could see multiple $100 bills for a total of $3,020.

     13. Officer Stone located $17,630 in a coat behind the passenger seat.

     14. Located in the pants pocket and loose inside Blain's vehicle was also $656. Neither Blain nor Rofinot claimed the money belonged to them and each asked for an attorney.

15. Officer Stone also located a handful of vehicle keys, some of which were shaved, in the center console of the vehicle. Based on Officer Stone's training and experience, shaved keys are frequently used for stealing or breaking into cars. Officer Bazer noticed another camouflaged bag in the back seat on the driver side of the vehicle. In the bag he located a gallon-sized Ziploc bag with a large amount of a white crystal substance. Officer Bazer recognized the substance as methamphetamine. Later the substance was field tested presumptive positive for methamphetamine. At the police station, Officer Bazer weighed the crystal substance in the bag which weighed about 241.5 grams (8.52 oz). In the same camouflaged bag, Officer Bazer located another smaller plastic Ziploc bag with a white crystal substance. The substance was double-bagged and Officer Bazer later weighed it in the bags and it weighed about 53.3 grams (1.885 oz.). Officer Bazer also located a small clear baggie inside a zippered case on the back floorboard of the vehicle. The small baggie had a white crystal substance inside it and it weighed about 4.5 grams (.16 oz.). In the same camouflaged bag with the crystal substance, Officer Bazer located several smaller baggies that were unused and a digital scale. There was also a long clear glass pipe with residue in it. Officer Bazer also located a black memo note book in the bag. In the note book, there were multiple names with values next to them. In Officer Bazer's training and experience, he has learned many people who sell or distribute illegal narcotics will keep hand-written notes regarding to whom they have sold drugs and the value of the drug. Officers Stone and Bazer also seized both Blain's and Rofinot's cell phones, a GPS, and a dash camera that was mounted to the front window of the vehicle. No one else was present during the search except law enforcement personnel.

16. At the SPD station, Officers Stone and Bazer lodged all of the seized property into evidence. Officer Stone and Officer Bazer counted and lodged a total of $21,306.

17. Officer Bazer transported Blain and Rofinot to the Lane County Jail without incident. Blain was lodged for unlawful possession of a controlled substance, methamphetamine, and delivery of methamphetamine, and possession of burglary tools. Rofinot was lodged for unlawful possession and delivery of controlled substance, methamphetamine. The currency was converted to a cashier's check payable to the U.S. Marshals Service for $21,306.

18. Blain's criminal drug history includes past felony convictions for controlled substance possession and unlawful delivery of methamphetamine. Also, non-drug offenses include burglary, driving on suspended license, and parole violations. Blain was booked at the Lane County Jail and charged with possession with the intent to distribute methamphetamine. He was subsequently released from custody and is not currently incarcerated. Based on the investigation, I am aware that Blain is a well-known drug dealer in the Springfield area and has no known employment.

19. Rofinot's criminal drug history includes past felony convictions for unlawful possession of methamphetamine. Rofinot was booked at the Lane County Jail and also charged with possession with the intent to distribute methamphetamine and was subsequently released from custody and is not currently incarcerated. Based on the investigation, I am aware that Rofinot is a well-known drug dealer in the Springfield area and has no known employment.

20. On May 8, 2018, at about 5:15 p.m., I spoke with Sabrina Lyn Wiseman by telephone. I advised her she was not in any trouble and I wanted to talk with her briefly about the money seized from Blain and Rofinot. Wiseman told me that Paul Blain was her boyfriend at the time and he stole the money from her just prior to Blain being stopped by the police. Wiseman said that she did not report the theft to the police because he was her boyfriend and did not realize it was taken until it was seized by the police. Wiseman said that the money was given to

her from her ex-husband Matthew Gall. According to Wiseman, Gall took out a home equity loan for his house located at 1980 Elanco Avenue in Eugene, OR. Gall had the money from the loan put into his US Bank account. Gall would then take the money out in cash and give it to Wiseman. When asked why Gall would take it out in cash rather than writing her a check or money order, Wiseman indicated she would rather have it in cash. Wiseman said that Gall gave her a lump sum of $15,000 once and then smaller amounts like $3,000 each time for a total of $28,000. Wiseman said she would get the documents from the loan that Gall received. She also said she would get any other bank documents supporting her claim that the money belonged to her and was from cash provided to her from her ex-husband.

21. Title 31 U.S.C. § 5313 and 31 C.F.R. § 1010.311 require financial institutions to file a Currency Transaction Report (CTR) for each deposit, withdrawal, exchange of currency or other payment in currency of more than $10,000, by, through, or to such financial institutions. A check of a law enforcement database revealed there were no CTRs for Wiseman or Gall for cash transactions over $10,000 with a financial institution. The lack of any CTRs is inconsistent with the information Wiseman provided regarding a $15,000 withdrawal by Gall.

## CONCLUSION

22. Neither Rofinot, Blain, nor Wiseman have any known legitimate income and the currency seized was likely proceeds from the sales of methamphetamine.

23. Based on the foregoing and my training and investigative experience, I have probable cause to believe that the $21,306.00 in U.S. Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as it constitutes or was derived from proceeds traceable to a specified

unlawful activity, possession and distribution of controlled substances, a violation of 21 U.S.C. § 841(a)(1).

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. §1746.

Executed this 13th day of June 2018.

*s/ Sean Cummings*
Sean Cummings
Special Agent
Drug Enforcement Administration

JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ❏ 1  U.S. Government Plaintiff
- ❏ 2  U.S. Government Defendant
- ❏ 3  Federal Question (U.S. Government Not a Party)
- ❏ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated or Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated and Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | ❏ 610 Agriculture | ❏ 422 Appeal 28 USC 158 | ❏ 400 State Reapportionment |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 620 Other Food & Drug | ❏ 423 Withdrawal 28 USC 157 | ❏ 410 Antitrust |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 625 Drug Related Seizure of Property 21 USC 881 | | ❏ 430 Banks and Banking |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | ❏ 630 Liquor Laws | **PROPERTY RIGHTS** | ❏ 450 Commerce |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | ❏ 640 R.R. & Truck | ❏ 820 Copyrights | ❏ 460 Deportation |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 650 Airline Regs. | ❏ 830 Patent | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ❏ 345 Marine Product Liability | ❏ 660 Occupational Safety/Health | ❏ 840 Trademark | ❏ 480 Consumer Credit |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 690 Other | **SOCIAL SECURITY** | ❏ 490 Cable/Sat TV |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | **LABOR** | ❏ 861 HIA (1395ff) | ❏ 810 Selective Service |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 710 Fair Labor Standards Act | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 195 Contract Product Liability | **PERSONAL INJURY** | ❏ 720 Labor/Mgmt. Relations | ❏ 863 DIWC/DIWW (405(g)) | ❏ 875 Customer Challenge 12 USC 3410 |
| ❏ 196 Franchise | ❏ 362 Personal Injury - Med. Malpractice | ❏ 730 Labor/Mgmt.Reporting & Disclosure Act | ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions |
| **REAL PROPERTY** | ❏ 365 Personal Injury - Product Liability | ❏ 740 Railway Labor Act | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| ❏ 210 Land Condemnation | ❏ 368 Asbestos Personal Injury Product Liability | ❏ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ❏ 892 Economic Stabilization Act |
| ❏ 220 Foreclosure | **PERSONAL PROPERTY** | ❏ 791 Empl. Ret. Inc. Security Act | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 893 Environmental Matters |
| ❏ 230 Rent Lease & Ejectment | ❏ 370 Other Fraud | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 894 Energy Allocation Act |
| ❏ 240 Torts to Land | ❏ 371 Truth in Lending | | | ❏ 895 Freedom of Information Act |
| ❏ 245 Tort Product Liability | ❏ 380 Other Personal Property Damage | | | ❏ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ❏ 290 All Other Real Property | ❏ 385 Property Damage Product Liability | | | ❏ 950 Constitutionality of State Statutes |
| **CIVIL RIGHTS** | **PRISONER PETITIONS** | **IMMIGRATION** | | |
| ❏ 441 Voting | ❏ 510 Motions to Vacate Sentence | ❏ 462 Naturalization Application | | |
| ❏ 442 Employment | **Habeas Corpus:** | ❏ 463 Habeas Corpus - Alien Detainee | | |
| ❏ 443 Housing/ Accommodations | ❏ 530 General | ❏ 465 Other Immigration Actions | | |
| ❏ 444 Welfare | ❏ 535 Death Penalty | | | |
| ❏ 445 Amer. w/Disabilities - Employment | ❏ 540 Mandamus & Other | | | |
| ❏ 446 Amer. w/Disabilities - Other | ❏ 550 Civil Rights | | | |
| ❏ 440 Other Civil Rights | ❏ 555 Prison Condition | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

- ❏ 1  Original Proceeding
- ❏ 2  Removed from State Court
- ❏ 3  Remanded from Appellate Court
- ❏ 4  Reinstated or Reopened
- ❏ 5  Transferred from another district (specify)
- ❏ 6  Multidistrict Litigation
- ❏ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing  (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ❏ Yes   ❏ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____